## Gatliff v. Commonwealth.

(Decided February 16, 1911.)

### Appeal from Bell Circuit Court.

1. Criminal Law—Right of Officer to Arrest.—An officer has the right to arrest without a warrant a person who is committing a public offense in his presence; and if the person whom an officer is attempting to arrest kills him in resisting the arrest, he will be guilty of murder.

2. New Trial on Account of Prejudice of Juror.—While a verdict should not be permitted to stand when it is shown that it was brought about or contributed to by the interest or prejudice of a juror, the evidence of this fact should be made to appear in a very satisfactory manner.

N. J. WELLER for appellant.

JAMES BREATHITT, Attorney General, TOM McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant shot and killed Gord Givens, a deputy sheriff, who was attempting to arrest him for being drunk and disorderly in his presence, thereby committing a public offense. Under the indictment charging

him with this crime, he was found guilty by the jury who tried him and his punishment fixed at imprisonment in the State penitentiary for life.

It appears from the evidence that Gatliff, who was drunk, went early in the morning to the house of Mrs. Bowers, where his wife was visiting, and commenced cursing and abusing his wife and others about the premises, at the same time flourishing a pistol in a dangerous and reckless manner. His conduct so alarmed the inmates of the house that one of them went after Givens, a deputy sheriff, who lived in the neighborhood to get him to come and arrest him. It is very clear from the evidence that Gatliff knew that an officer had been sent for, as he said more than once in his drunken frenzy that if an officer came he would kill him. The officer, after receiving the message that his services were needed, went immediately to the house where Gatliff was, and as soon as he opened the door the shooting between them commenced. The officer was only shot once, but the wound proved fatal; while Gatliff was seriously wounded by the officer, who was also armed with a pistol. Gatliff testifies that he did not know that Givens was an officer, and that he was quiet and orderly when Givens came in the house, and that Givens commenced shooting at him without any provocation, and that he shot and killed him in self-defense. But the weight of the evidence is to the effect that Gatliff fired the first shot and the one that killed the officer, and it is plain that he knew or believed that Givens was the officer that had been sent for. There is also evidence that when the officer arrived, Gatliff was behaving himself in such a disorderly manner as to authorize his arrest by the officer for an offense committed in his presence.

Briefly stated, the theory of the Commonwealth is that Gatliff who was drunk and disorderly, was expecting an officer to come and arrest him, and shot Givens as soon as he entered the door. While the claim of the defense is that Givens went into the room where Gatliff was and without warning shot him while he was quietly sitting in a chair, and that Gatliff only fired in self defense.

The instructions are those usually given in cases where the crime committed is the killing of an officer. The principal objection urged to them is that Gatliff had not committed any offense in the presence or hear-

ing of the officer, and therefore when the officer attempted to arrest him without a warrant he occupied the same position as a private individual would who attempted under similar circumstances to make an arrest. In short, the instructions are assailed upon the ground that there was no evidence tending to show that Gatliff was committing any offense when the officer arrived, or to show that Gatliff resisted the arrest, or killed Givens in an effort to prevent being arrested. But there was evidence introduced by the Commonwealth upon all of these propositions sufficient to justify the instructions and to authorize the jury in finding (1) that Gatliff at the time the officer arrived was committing a public offense by his drunken and disorderly conduct, (2) that he knew Givens was an officer and had come to arrest him, (3) that he fired the shot that killed him before the officer had an opportunity to tell him the purpose of his visit or that he came to put him under arrest, (4) that he killed the officer to prevent being arrested.

Another ground relied on for a new trial is that one of the jurors who sat in the case had formed and expressed the opinion that Gatliff was guilty, before he was accepted as a juror. In support of this ground the affidavits of two persons were filed, but their statements were positively denied in an affidavit made by the juror The trial judge, who was doubtless acquainted with the parties, did not regard these affidavits as sufficient to authorize him to set aside the verdict, and we are not disposed to disturb his ruling upon this point. The court should be well satisfied of the interest or prejudice of a juror before setting aside the verdict on the ground that he had expressed an opinion concerning the guilt of the accused. After a verdict of conviction had been returned, it is often not difficult to obtain affidavits of this character, and it would result in the miscarriage of justice in many cases if the verdict should be set aside on account of an alleged expression of opinion by a juror. While a verdict should not be permitted to stand when it is shown that it was brought about or contributed to by the interest or prejudice of a juror, the evidence of this fact to be available should be made to appear in a very satisfactory manner.

The judgment is affirmed.